UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No._____

FILED
IN CLERKS OFFICE

2002 JUL -3 P 2: 55

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| PAREXEL INTERNATIONAL<br>CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>AVAX TECHNOLOGIES, INCORPORATED<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**02-11356RWZ**

RECEIPT #_____
AMOUNT $____ 150—
SUMMONS ISSUED____ yes
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK.____ SS
DATE____ 7-3-02

# COMPLAINT

## INTRODUCTION

1.      The Plaintiff, PAREXEL International Corporation ("PAREXEL"), brings this

action for damages against the Defendant, AVAX Technologies, Inc. ("AVAX"), for breach of

contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.

AVAX has refused to pay PAREXEL in excess of $1.5 million for services PAREXEL

performed pursuant to their Agreement for Services.

## PARTIES

2.      The Plaintiff, PAREXEL, is a Massachusetts corporation, with its principal place

of business in Waltham, Massachusetts.  PAREXEL is a leading contract research organization,

providing a full range of clinical research and development services to pharmaceutical and

biotechnology companies worldwide.  PAREXEL's services include designing, initiating and

monitoring clinical trials, the management and analysis of clinical data, and consulting on



regulatory affairs.  PAREXEL has particular experience and expertise in managing complex clinical trials related to oncology therapies.

3.      The Defendant, AVAX, is a Delaware corporation, with its principal place of business in Overland Park, Kansas.  AVAX is a biotechnology company that develops individualized therapies and other products and technologies for various illnesses.

4.      The Defendant transacts business in Massachusetts, has corresponded and communicated regularly with the Plaintiff in Massachusetts, and has traveled to Massachusetts in connection with the transactions that give rise to this lawsuit.  The acts giving rise to this lawsuit, including the acts of the Defendant, occurred in Massachusetts, and have caused damage to the Plaintiff in Massachusetts.  In addition, the Defendant has executed agreements giving rise to this lawsuit that, by their express terms, are governed by the laws of Massachusetts.

JURISDICTION

5.      This Court has diversity jurisdiction of this action pursuant to 28 U.S.C. § 1332.

VENUE

6.      The United States District Court for the District of Massachusetts is an appropriate venue for this action pursuant to 28 U.S.C. § 1391.

STATEMENT OF FACTS

7.      This dispute arises out of AVAX's failure to pay for services that PAREXEL rendered in connection with clinical trials to examine:  (a) the effect, efficacy, and safety of O-Vax Autologous Cell vaccine therapy ("O-Vax") in ovarian cancer patients; and (b) the effect, efficacy, and safety of M-Vax Autologous Cell vaccine therapy ("M-Vax") in cancer patients with melanoma.

BOSTON 1448412v4

*The O-Vax Proposal*

8.       In late 1998 and early 1999, PAREXEL contacted AVAX to express PAREXEL's

interest in working with AVAX to provide it with clinical trial and related services.  In

September 1999, AVAX's Manager of Clinical Development, Karen Doak, sent PAREXEL

background information on AVAX's O-Vax program and stated that it planned to file with the

U.S. Food and Drug Administration ("FDA") an Investigational New Drug Application (INDA)

for approval of a clinical trial.  The O-Vax program was to involve two different phases: first,

removing the tumor and processing a vaccine from the tumor ("tumor procurement"); and

second, treating the tumor with the vaccine when and if it recurred.  The O-Vax program

consisted of three trials using three different protocols at each site.

9.       On September 30, 1999, PAREXEL submitted to AVAX a proposal for clinical

trial management services for the O-Vax program, in which PAREXEL proposed to provide the

following clinical trial management services for just under $1.9 million: general project

management, case report form design and printing, lab services, investigator meeting

organization and arrangements, site selection and initiation, study start-up activities, clinical

monitoring, medical management, medical, regulatory, and biostatistical consulting services,

data management, and development of the final integrated clinical statistical report.  AVAX was

aware that PAREXEL would provide some of these services in Massachusetts.

10.       In early November 1999, AVAX requested additional information from

PAREXEL, including a cost-breakdown and costs based on several scenarios for the project.

PAREXEL provided AVAX with the requested information, including a modified

cost-breakdown which Allison Houghteling of PAREXEL's Proposal Development Group e-

mailed to AVAX from Waltham, Massachusetts.

11.       The FDA approved AVAX's O-Vax program in December 1999.

- 3 -

BOSTON 1448412v4

*The Letter of Intent*

12.    After AVAX elected to retain PAREXEL in connection with the O-Vax program,

Matthew Lamphere, PAREXEL's Senior Contract Manager sent AVAX a draft letter of intent

("LOI") regarding clinical trial management services for the O-Vax program from a standard

template. Michelle Hardiman, PAREXEL's in-house counsel located in Waltham, reviewed and

edited the LOI before Lamphere mailed it to AVAX for review on December 10, 1999.

13.    AVAX and PAREXEL negotiated the terms of the LOI during December 1999

and January 2000 through phone calls, e-mails, and faxes. Participants in these negotiations

included Houghteling and Hardiman. AVAX was aware that both Houghteling and Hardiman

were located in Massachusetts.

14.    In late January 2000, Bernard D. King, Vice President and General Manager,

executed the LOI on behalf of PAREXEL and Jeff Jonas, M.D., President, executed the LOI on

behalf of AVAX.

*The Agreement for Services and Exhibits A, B, and C thereto*

15.    After execution of the Letter of Intent, Hardiman prepared a draft Agreement for

Services ("AFS") outlining the specific terms and conditions that would govern the contractual

relationship between AVAX and PAREXEL. Lamphere prepared drafts of Exhibits A, B, and C,

outlining the specific clinical trial management services that PAREXEL would perform for

AVAX in connection with the O-Vax program, and the cost to AVAX for those services.

16.    AVAX and PAREXEL negotiated the terms of the AFS and Exhibits A, B, and C

through phone calls, e-mails, and faxes. Hardiman, among others, participated in these

negotiations. AVAX knew that Hardiman had to review and approve any and all changes to the

AFS and Exhibits A, B, and C, and knew that Hardiman was located in Massachusetts.

- 4 -

17.    On June 5, 2000, Lamphere e-mailed the final draft of the AFS to Dr. Ernest W.

Yankee, AVAX's Executive Vice President, for his signature, copying both Hardiman and Doak

on the e-mail.  Yankee signed the AFS for AVAX on June 9, 2000.  James F. Winschel,

PAREXEL's Senior Vice President and Chief Financial Officer, signed the AFS in Waltham on

June 13, 2000.  AVAX knew that the final decision on whether to execute the AFS would be

made by executives in Massachusetts.

18.    The final, executed AFS stated in Section 1.03 that "[e]ach work assignment shall

be governed by the terms and conditions of this Agreement and by such supplementary written

amendments of this Agreement or Exhibits as may be, from time to time, executed between the

parties.  In the event of a conflict between the terms of this Agreement and an Exhibit, the terms

of this Agreement shall govern."

19.    Section 16.01 of the AFS further stated that the AFS "constitutes the entire

agreement between the parties on the subject matter defined in Exhibit A and supersedes all prior

contracts, agreements, and understandings relating to the same subject matter between the

parties" and that the parties "intend this Agreement to be a complete statement of the terms of

their agreement, and no change or modification of any of the provisions of this Agreement shall

be effective unless it is in writing and signed by a duly authorized officer of PAREXEL and

AVAX."

20.    On June 29, 2000, Yankee signed Exhibits A, B and C to the AFS for AVAX.

Josef H. von Rickenbach, PAREXEL's Chairman, President and CEO, then executed Exhibits A,

B and C to the AFS in Waltham, Massachusetts, on or about June 30, 2000.  AVAX knew that

the final decision on whether to execute Exhibits A, B and C would be made by executives in

Massachusetts, and knew that von Rickenbach was located in Massachusetts.

- 5 -

BOSTON 1448412v4

21.     On July 18, 2000, Lorene Monahan of PAREXEL sent Yankee a cover letter from Waltham, Massachusetts on Waltham letterhead attaching the executed original of the AFS.

22.     PAREXEL and AVAX negotiated several changes to Exhibits A, B, and C, in the form of Project Change Notices ("PCN"), all of which were executed by PAREXEL in Massachusetts.  AVAX knew that the final decision on the PCNs would be made by executives in Massachusetts, and knew that the Exhibits would be, and in fact were, executed in Massachusetts.

23.     On August 25, 2000 and December 5, 2000, Kathleen J. Fazio, PAREXEL Administrative Assistant in Waltham, Massachusetts, sent Yankee two letters, each enclosing a PCN which had been executed by PARAXEL's CEO in Massachusetts on August 15, 2000 and November 22, 2000 respectively.

### The M-Vax Proposal

24.     Prior to PAREXEL's involvement, AVAX had retained another contract research organization to provide it with services for the M-Vax clinical trials.

25.     AVAX indicated that it would consider retaining PAREXEL's clinical trial related services because AVAX was not satisfied with the performance of the company then providing the M-Vax clinical trial services.  Some time on or around June 2000, AVAX initiated discussions with PAREXEL about transitioning the M-Vax trial from the other company to PAREXEL.  Some of these discussions occurred during a meeting with then AVAX President Jeff Jonas and two PAREXEL executives at PAREXEL's Waltham office.

26.     On June 29, 2000, PAREXEL submitted a proposal to AVAX for clinical trial management services for the M-Vax program.  PAREXEL proposed to provide the following clinical trial management services for a total estimated cost of just under $5.6 million: general project management, study/site initiation, clinical site monitoring and management, medical

- 6 -

support and safety monitoring, project management, and good clinical practices audits. AVAX was aware that PAREXEL would provide some of these services in Massachusetts.

27.    AVAX and PAREXEL negotiated the terms of Exhibit D to the AFS which outlined the specific clinical trial management services PAREXEL would perform for AVAX in connection with the M-Vax program, and the cost to AVAX for those services.

28.    Yankee signed Exhibit D for AVAX on August 4, 2000. Winschel executed Exhibit D in Waltham on August 16, 2000. AVAX knew that the final decision on whether to execute Exhibit D would be made by executives in Massachusetts, and knew that Exhibit D would be, and in fact was, executed in Massachusetts.

29.    PAREXEL and AVAX negotiated several changes to Exhibit D in the form of four Project Change Notices ("PCN"). Each of these PCNs was signed first by AVAX and subsequently executed by PAREXEL in Massachusetts. AVAX knew that the final decision on the PCNs would be made by executives in Massachusetts, and knew that the PCNs would be, and in fact were, executed in Massachusetts. PAREXEL sent AVAX three of the four executed original PCNs from Massachusetts on PAREXEL'S Waltham letterhead.

### *Performance under the AFS*

30.    The services that PAREXEL provided to AVAX for the O-Vax program pursuant to the AFS included: identifying, initiating and qualifying sites; collecting and reviewing regulatory documents; negotiating, drafting and revising the design of the case report forms for two protocols; drafting project manuals; conducting an investigator's meeting; and managing payments to investigators. As AVAX was aware, some of PAREXEL's services were performed in Massachusetts, including: consultations concerning protocol and case report form design, patient eligibility issues, and communications with the FDA.

- 7 -

31.     From August 2000, PAREXEL provided services to AVAX on the M-Vax program pursuant to the AFS, including: identifying, recruiting, initiating and qualifying sites; collecting, reviewing and analyzing regulatory documents, and bringing those documents into compliance; monitoring sites; drafting project related manuals; advising on the redesign of the case report form; managing payments to investigators; tracking serious adverse events and adverse events, and following-up on unreported serious medical events prior to PAREXEL's involvement in the study; and tracking historical and current patient data. AVAX was aware that PAREXEL would perform some of these services in Massachusetts, including site selection and site recruitment, and melanoma therapeutic area training.

32.     Throughout the period of its contractual relationship with AVAX, PAREXEL routinely invoiced AVAX for the services provided to AVAX pursuant to the AFS, Exhibits, and PCNs. PAREXEL mailed the invoices from Waltham, Massachusetts on Waltham letterhead, and listed a Waltham contact for questions concerning the invoices.

*Termination of the AFS*

33.     Section 5.02 of the AFS permits AVAX to "terminate this Agreement without cause, and/or [] terminate all or any part of the Services to be provided to PAREXEL hereunder, upon sixty (60) days prior written notice to PAREXEL."

34.     AVAX provided PAREXEL written notice of AVAX's intent to terminate the O-Vax services on June 15, 2001.

35.     AVAX subsequently communicated in writing with PAREXEL regarding AVAX's intent to terminate the M-Vax services.

36.     AVAX and PAREXEL agreed on a wind down plan under which PAREXEL would perform "closeout activities," including visiting all initiated sites to review and collect regulatory documents, performing quality assurance audits, and closing down the sites.

- 8 -

BOSTON 1448412v4

37.     Pursuant to Section 5.04 of the AFS, upon termination of the Agreement,

PAREXEL was "entitled to such amounts as are due to PAREXEL for (a) all Services properly

rendered and costs properly incurred by PAREXEL according to the terms of this Agreement up

to the effective date of termination and not yet paid for, and (b) all fees earned and costs incurred

in accordance with a Wind Down Plan, reasonable non-cancelable obligations properly incurred

by PAREXEL for the performance of the Services prior to receipt of notice of termination."

38.     AVAX has refused to pay PAREXEL invoices in excess of $1.5 million for the

M-Vax and O-Vax studies performed pursuant to the AFS, including the following:

a.     Preparing for site visits, including communicating with the site, reviewing
       project-related communications, and completing tracking forms;

b.     Performing site visits to review regulatory documents and drug accountability,
       perform adverse event follow-up, and general site management;

c.     Drafting Monitoring Reports;

d.     Participating in both internal meetings and telephone conferences and meetings
       and telephone conferences with AVAX concerning the M-Vax and O-Vax;

e.     Drafting and completing project documents and expense and other reports;

f.     Maintaining files;

g.     Reviewing and analyzing case report forms, correcting errors and addressing
       problems;

h.     Performing quality assurance audits and drafting quality assurance reports; and

i.     Closing out the clinical trial sites.

39.     David Tousley, AVAX's COO and CFO, communicated with PAREXEL officers

in Waltham, Massachusetts regarding AVAX's obligation to pay the PAREXEL invoices.  After

notifying PAREXEL of its intent to terminate, AVAX, through Tousley, acknowledged that it

owed PAREXEL approximately $1.6 million.  Thereafter, PAREXEL and AVAX discussed a

BOSTON 1448412v4

schedule of payments for AVAX to make to PAREXEL for the money it owed to PAREXEL

under the terms of the AFS.  AVAX has subsequently refused to make payment.

COUNT I - BREACH OF CONTRACT

40.    PAREXEL restates and incorporates paragraphs 1-39 as if set forth fully herein.

41.    The AFS, and Exhibits and PCNs thereto, constitute a valid and binding

agreement negotiated in good faith by both parties.

42.    PAREXEL has performed its obligations under the AFS, Exhibits, and PCNs.

43.    AVAX breached the AFS by failing to pay PAREXEL for services it performed

pursuant to the AFS, Exhibits, and PCNs.

44.    PAREXEL has suffered substantial damages as a result of AVAX's failure to pay

for services performed by PAREXEL pursuant to the AFS, Exhibits, and PCNs.

COUNT II – BREACH OF THE IMPLIED
COVENANT OF GOOD FAITH AND FAIR DEALING

45.    PAREXEL restates and incorporates paragraphs 1-44 as if set forth fully herein.

46.    The AFS, and Exhibits and PCNs thereto, constitute a valid and binding

agreement negotiated in good faith by both parties.

47.    AVAX's conduct had the effect of destroying or injuring PAREXEL's right to

receive the fruits of the contract.

48.    PAREXEL has suffered substantial damages as a result of AVAX's breach of the

implied covenant of good faith and fair dealing.

COUNT III – UNJUST ENRICHMENT

49.    PAREXEL restates and incorporates paragraphs 1-48 as if set forth fully herein.

50.    PAREXEL provided clinical trial management services to AVAX for its O-Vax

and M-Vax clinical trials.

- 10 -

BOSTON 1448412v4

51.     AVAX benefited from the services PAREXEL provided.

52.     AVAX unjustly benefited from the services PAREXEL provided by failing to compensate PAREXEL for those services.

53.     PAREXEL has suffered damages as a result of AVAX's failure to compensate it for those services.

PRAYER FOR RELIEF

WHEREFORE, PAREXEL respectfully requests that the Court:

1.     Award PAREXEL damages resulting from AVAX's breach of the AFS;

2.     Award PAREXEL damages resulting from AVAX's breach of the implied covenant of good faith and fair dealing;

3.     Award PAREXEL the value of the services provided to AVAX pursuant to the AFS;

4.     Award PAREXEL interest at the legal rate on its damages;

5.     Award PAREXEL the costs of this litigation, including attorneys' fees; and

6.     Award PAREXEL any further relief that the Court deems proper and just.

PAREXEL INTERNATIONAL CORPORATION

By its attorneys,

Andrea Robinson (BBO No. 556337)
Maura T. Healey (BBO No. 640856)
Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
617-526-6000

Date:  July 3, 2002

BOSTON 1448412v4